UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**UNITED STATES OF AMERICA**                                                                                          **PLAINTIFF**

v.                                                                                                                                       No. 5:22-cr-28-BJB

**ROBERT BLAINE**                                                                                                              **DEFENDANT**

### MEMORANDUM OPINION & ORDER

The Government has accused Robert Blaine of eight federal felony counts involving money laundering and a conspiracy to possess with intent to distribute substances containing methamphetamine and fentanyl. Fourth Superseding Indictment (DN 116). The indictment alleges that Blaine conspired to possess and distribute these substances while physically present "in the Western District of Kentucky, the District of Arizona, and elsewhere." *Id.* at 1. And while in Christian County, part of the Western District of Kentucky, Blaine allegedly sent and received funds between Kentucky and Arizona in a manner "affecting interstate and foreign commerce." *Id.* at 2.

**A. Jurisdiction.** Since the grand jury originally indicted Blaine almost two years ago, he has been represented by six different court-appointed lawyers. While represented by counsel, he has filed three separate *pro se* motions. *See* DNs 154 (jurisdiction), 155 (pretrial release), 177 (jurisdiction). The latest (DN 177) seeks dismissal for lack of jurisdiction under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701, *et seq.*

Blaine contends that because the alleged offense "occurred in an Indian casino, on tribal land in Arizona," this Court lacks jurisdiction. *Id.* at 1. His basic position appears to be that only an Arizona state court could preside over his criminal prosecution. "[T]here is … no federal jurisdiction for a victimless crime committed in Indian reservation country [*sic*] by a non-Indian," Blaine contends, "because the state [possesses] exclusive criminal jurisdiction over such crimes." *Id.* at 3 (cleaned up). After recounting his version of the facts on the first page of the *pro se* motion to dismiss, Blaine devotes the remaining six pages to quoting a single state intermediate appellate court opinion. *Id.* at 2–7 (quoting *People v. Collins*, 826 N.W.2d 175, 179–81 (Mich. Ct. App. 2012)).

That decision doesn't help Blaine. For one, the court held that the defendant *was* subject to the jurisdiction of the state court, despite Collins' assertion that the

offense was "victimless" and occurred in Indian country. *Collins*, 826 N.W.2d at 181. For another, the opinion addressed a question—state jurisdiction over prosecutions for crimes occurring on tribal lands—that differs from the question of federal jurisdiction Blaine raises here. *Id.* at 176–77. The *Collins* court appears to have taken for granted that federal courts may exercise jurisdiction over such prosecutions. *Id.* at 180 (citing 18 U.S.C. §§ 1152–53). And the Michigan Court of Appeals' decision addressed only conduct that occurred within a casino on tribal land. *See Collins*, 826 N.W.2d at 178–79. Blaine, by contrast, is accused of illegal acts that occurred in multiple states, including Kentucky. Indictment at 1–2. He doesn't argue that these allegations took place *exclusively* in Indian country. And his motion cites no authority suggesting a federal court lacks jurisdiction even if the charged acts occurred, at least in part, within the court's territorial jurisdiction.

Basic principles of federal law show this Court does have jurisdiction over Blaine and the criminal counts the Government has brought against him. Article III of the federal Constitution states that the "judicial Power of the United States … shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. This jurisdiction includes "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and treaties made, or which shall be made, under their Authority[.]" § 2, cl. 1. Congress passed laws, which the President signed, creating U.S. district courts, including this Court—the U.S. District Court for the Western District of Kentucky. 28 U.S.C. § 97. And Congress assigned the "district courts of the United States … original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.

A federal grand jury charged Blaine with violating a "La[w] of the United States," U.S. CONST., art. III § 2, specifically for conspiring "to possess with intent to distribute and to distribute 50 grams or more of methamphetamine and 400 grams or more of a mixture and substance containing a detectible amount of … Fentanyl." Indictment at 1 (citing 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi) & (viii), 846). This is an "offens[e] against the laws of the United States," 18 U.S.C. § 3231, which subjects a defendant to the jurisdiction of the U.S. federal courts. The grand jury also charged him with money laundering, which likewise triggers federal-court jurisdiction. Indictment at 2–4 (citing 18 U.S.C. § 1956(a)(1)(A)(i).

And Blaine may be prosecuted in this Court because the Fourth Superseding Indictment alleges that he conducted these activities, at least in part, in Christian County, Kentucky. Indictment at 2. That location lies within the Western District of Kentucky. That some acts also occurred out of state, or on tribal lands, doesn't matter. "[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." *See* 18

U.S.C. § 3237(a). True, a special jurisdictional statute known as the Major Crimes Act applies to some crimes committed in Indian country. But that statute covers only crimes committed "by Indian defendants," which Blaine does not appear to be, and routes cases *into* federal court rather than out of it. *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2479 (2020) ("States are otherwise free to apply their criminal laws in cases of non-Indian victims and defendants, including within Indian country.").

Further, this Court has personal jurisdiction over Blaine, who was both arrested and taken into custody in this district. DN 25. He was also arraigned in this district. DN 30. Without question, "[f]ederal courts have personal jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court." *United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016). So the Court rejects the Defendant's jurisdictional objections. This Court is a proper venue in which to consider the accusations against Blaine.

**B. Self-Representation.** Regardless of the merits of Blaine's motion, it is procedurally inappropriate. Federal criminal defendants enjoy a constitutional and statutory right to either represent themselves (that is, to proceed "*pro se*") or to be represented by a lawyer. But they have no right to do both simultaneously: the law does not entitle defendants to "hybrid representation" in which defendants may partially represent themselves by, for example, supplementing their counsel's filings with their own *pro se* requests to the court. Like other federal criminal defendants, Blaine must either represent himself or appear through counsel. *See United States v. Loudermilk*, 425 Fed. App'x 500, 503 (6th Cir. June 13, 2011) ("[A] defendant has no right to combine self-representation with representation by counsel"); *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) (collecting cases).

When faced with *pro se* motions from defendants who are represented, courts typically refuse to consider the requests for relief. "Ordinarily, a court will not consider *pro se* submissions from a party represented by counsel." *ABN ABRO Mortgage Group, Inc. v. Smith*, No. 1:06-cv-36, 2006 WL 2035542, at *1 (S.D. Ohio July 18, 2006) (citing *United States v. Hirschfeld*, 911 F. Supp. 200, 201 (E.D. Va. 1995) (a party may proceed *pro se* or with representation, but not both); *see also Hall v. Dorsey*, 534 F. Supp. 507, 508 (E.D. Pa. 1982) (same). So the Court reminds Blaine that so long as he is represented by an attorney, all submissions to the Court must be made through that attorney.

**C. Substitution of Counsel.** In a recent status conference, Blaine's lawyer told the Court that his client may ask for another change in appointed counsel. *See* DN 178. Neither Blaine nor his lawyer have yet submitted an explanation why this might be necessary. And the Court will not automatically grant a request for new counsel—particularly at this advanced stage in the case. Both of Blaine's co-defendants have already pled guilty. The Government originally filed the case nearly

3

two years ago. And the Government has filed four superseding indictments since then.

The Sixth Amendment of the Constitution, as interpreted by the U.S. Supreme Court in 1963, provides indigent criminal defendants with the right to a lawyer provided at the Government's expense. *See Gideon v. Wainwright*, 372 U.S. 335, 342–43 (1963). But "an indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

Even if a defendant seeks new counsel before trial, the court "must find good cause for a change of counsel, such as an *actual* conflict of interest, a *complete* breakdown in communications between attorney and client, or an *irreconcilable* break in the attorney-client relationship." *United States v. Elie*, No. 3:21-cr-149, 2024 WL 113781, at *2 (E.D. Tenn. Jan. 10, 2024) (emphases added). *See also Kessinger v. United States*, No. 1:16-cv-78, 2016 WL 8230656, at *3 (W.D. Ky. Nov. 1, 2016) (objection overruled Dec. 7, 2016); *United States v. Richardson*, No. 2:06-cr-100, 2006 WL 8439114, at *1 (S.D. Ohio July 26, 2006).

District courts have broad discretion when ruling on these motions. The Sixth Circuit considers four factors when determining whether good cause exists: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Wells*, 55 F.4th 1086, 1090-91 (6th Cir. 2022). "When an accused seeks substitution of counsel," whether pre-trial or mid-trial, "he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution." *United States v. Sullivan*, 431 F.3d 976, 979–80 (6th Cir. 2005) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)); *see also United States v. Hudson*, No. 21-4126, 2023 WL 1463701, at *6 (6th Cir. Feb. 2, 2023) (collecting cases extending principle to pretrial substitution of counsel).

These standards are not a roadmap to obtaining new counsel. They are a backstop to be used only after a defendant and their counsel have shown a strenuous effort to communicate well and reconcile any differences. "[T]otal lack of communication preventing an adequate defense" differs considerably from mere dissatisfaction on the defendant's part or "communication with counsel which the defendant feels is unsatisfactory." *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996) (quoting *Iles*, 906 F.2d at 1130 n.8). "[S]ome lack of understanding or lack of confidence" in counsel is insufficient to establish good cause. *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). Even a "defendant's differences of

4

opinions with his attorney do not create a complete breakdown of communication that compromises his defense." *United States v. Powell*, 847 F.3d 760, 779 (6th Cir. 2017). Also, a "lack of communication resulting from a defendant's refusal to cooperate with his attorney does not constitute good cause for substituting counsel." *Id.*

At this point, the Court lacks any information regarding the basis for Blaine's request—and whether that information might meet this demanding standard. As noted above, Blaine has already changed counsel several times—albeit sometimes through little if any fault of his own. But the Court has already warned Blaine that the cycle cannot persist indefinitely. *See* Jan. 17, 2024 Hearing (DN 165) (underscoring importance of understanding that the parties couldn't continue to cycle through lawyer after lawyer). The case was at a point, as of January 2024, that absent a truly compelling reason why appointed counsel couldn't continue, circumstances would strongly suggest Blaine had effectively given up his right to counsel. *Id.* The Magistrate Judge gave Blaine a similar warning. *See* DN 139 at 4 ("[Blaine] is WARNED that any future request for a sixth appointed counsel in the absence of good cause may result in waiver of his Sixth Amendment right to counsel."). Without "good cause" for Blaine's attorney to be replaced, a substitution request will likely lead the Court to "require the defendant to choose between maintaining current counsel or proceeding *pro se*." *United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016) (the defendant effectively waived his right to counsel after four failed attempts to work with an appointed lawyer).

This context is certainly relevant to the determination whether good cause exists to authorize a further substitution of counsel and the delay such a move would necessarily entail. *See United States v. Vasquez*, 560 F.3d 461, 467–68 (6th Cir. 2009) (affirming denial of motion to substitute counsel because communication issues likely related to defendant's own actions). Nevertheless, in order to protect Blaine's right to effective and unconflicted counsel, the Court invites Blaine, his counsel, or both to file briefs no later than June 10, 2024 explaining whether and why this Court should consider substituting counsel to replace Mr. Cole. If filed, any submission should clearly and specifically explain why substitution would or wouldn't be appropriate here. The brief(s), if any, should also indicate whether a hearing with Judge Beaton or Judge King might be appropriate to resolve the request.

## ORDER

The Court denies the motion to dismiss for lack of jurisdiction (DN 177) and authorizes Blaine and/or defense counsel to submit briefing regarding the substitution of counsel.

Benjamin Beaton, District Judge
United States District Court

May 15, 2024